E-FILED
Friday, 08 January, 2021  11:29:01 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| **YANCHENG SHANDA YUANFENG EQUITY INVESTMENT PARTNERSHIP,** a Limited Partnership Organized Under the Laws of China, | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| v. | ) | **Case No. 20-CV-2198** |
| **KEJIA WAN and KEVIN WAN,** | ) ) ) | |
| **Defendants.** | ) | |

### ORDER

Plaintiff, Yancheng Shanda Yuanfeng Equity Investment Partnership ("Yancheng"), brings this Amended Complaint (#3) in federal court via diversity jurisdiction (28 U.S.C. § 1332(2)), to enforce a default judgment obtained in the People's Republic of China ("China") against Illinois residents Defendants Kejia Wan and Kevin Wan, pursuant to the Illinois Uniform Foreign Country Money Judgments Recognition Act (735 Ill. Comp. Stat. 5/12-661, et seq.) (the "Act").  Defendant Kevin Wan filed a Motion to Dismiss (#8) on September 23, 2020, to which Yancheng filed a Response (#12) on October 7, 2020.  For the following reasons, Defendant's Motion to Dismiss (#8) is DENIED.

2:20-cv-02198-CSB-EIL  # 13  Page 2 of 26

BACKGROUND

The following background is taken from the allegations in Yancheng's Amended Complaint (#3). At this stage of the proceedings, the court must accept as true all material allegations of the Amended Complaint, drawing all reasonable inferences therefrom in Yancheng's favor. See *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966 (7th Cir. 2016).

Zmodo Technology Shenzhen Corp. Ltd. ("Zmodo") is a Chinese company and a global provider of security cameras. On March 8, 2017, Yancheng, Defendant Kevin Wan (hereinafter referred in this Order as "Defendant," even though there is another Defendant in this case, Kevin Wan's brother Kejia), and a related entity signed an Investment Agreement whereby Yancheng agreed to pay RMB50,000,000 (approximately $7,145,306) in exchange for 2,052,587 shares of Zmodo stock. Yancheng paid the RMB50,000,000 and received the shares.

On April 30, 2017, Yancheng signed an Equity Transfer Agreement with several entities whereby Yancheng would pay a total of RMB42,665,478 (approximately $6,097,158) for additional shares of Zmodo. Yancheng paid the required amount and received the shares.

In May 2018, Yancheng and Defendant entered into a Share Repurchase Agreement whereby Defendant agreed to repurchase the shares of Zmodo held by Yancheng before December 31, 2018. Defendant agreed to pay the total amount invested by Plaintiff (RMB92,665,479 - approximately $13,242,465), plus interest at an annual rate of 12%.

2

In December 2018, Kejia Wan signed a Guarantee Agreement with Yancheng agreeing that he would provide an irrevocable joint and several liability guarantee for the performance of the obligation by Defendant under the Share Repurchase Agreement.  Defendant failed to repurchase the shares by December 31, 2018.

Yancheng and Defendant then signed a Supplementary Share Repurchase on January 29, 2019, whereby Defendant agreed to repurchase the shares at a rate of 12% interest plus an additional .05% overdue payment for each day the payment was late after December 31, 2018.

On April 20, 2019, Zmodo issued a Letter of Guarantee, agreeing to provide joint and several liability for Defendant's obligations under the Share Repurchase Agreement and the Supplementary Share Repurchase Agreement.  The Letter of Guarantee was signed by Kejia Wan.

At all relevant times and as each of these agreements were signed and executed, Defendant and Kejia Wan both maintained offices at the Financial Technology Building in Shenzhen City, China.  Defendant and Kejia Wan also frequently visited and resided in China during this period.

Yancheng filed suit on May 20, 2019, in Yancheng, China, with the Yancheng Intermediate People's Court of Jiangsu Province ("the court").  Kejia Wan appeared in the lawsuit and was represented by a local attorney.  Defendant was summoned by the court but did not appear, so the court deemed his failure to appear as a waiver of his right to respond.

The court considered the evidence in the case and entered judgment on December 20, 2019.  Yancheng attached a copy of the judgment, along with a certified English translation, to the Amended Complaint.

The court found that both Defendant and Kejia Wan resided at the Financial Technology Building in Shenzhen City, China.  The court found Defendant liable for a money judgment of RMB92,665,478, plus annual interest of 12% on RMB50,000,000, for the period of March 22, 2017, to December 30, 2018, and 15% thereafter to the date the principal is actually paid; annual interest of 12% on RMB42,65,478 for the period of April 30, 2017, to December 30, 2018, and 15% thereafter to the date the principal is actually paid.

The court found Kejia Wan jointly and severally liable for this money judgment. The court also found Defendant and Kejia Wan jointly liable for court costs of RMB660,156.  The court provided Defendant and Kejia Wan with 30 days to appeal the judgment.  Defendant and Kejia Wan did not appeal the judgment.

On March 4, 2020, the court issued a ruling that the judgment should be executed immediately by the People's Court of Yancheng Economic and Technological Development Zone.  A copy of this ruling along with a certified English translation is attached to the First Amended Complaint.

4

On April 23, 2020, the People's Court of Yancheng Economic and Technological Development Zone recognized the Intermediate People's Court of Jiangsu Province's ruling and executed a money judgment against Defendant and Kejia Wan for RMB130,914,389.30 (approximately $18,708,468.74). A copy of this ruling along with a certified English translation is attached to the Amended Complaint.

The only count in the Amended Complaint seeks to enforce the Chinese court judgment pursuant to the Act, alleging: the judgment is a foreign country judgment granting a sum of money and is a final, conclusive, and enforceable judgment under the laws of China. Yancheng alleges the judgment is not a judgment for taxes, fines, or another penalty, and is not a judgment for divorce, support, maintenance, or other judgment rendered in connection with domestic relations. Yancheng demands judgment in its favor for $18,526,319.69 and costs.

The parties have attached other documents to the Motion to Dismiss and Response, including the affidavit of Defendant and documents explaining Chinese law.

ANALYSIS

Defendant raises four arguments as to why this court should dismiss Yancheng's action: (1) he was not served in the Chinese action, thereby depriving him of the safeguards of due process; (2) Yancheng fails to allege that the Chinese default judgment is final, conclusive, and enforceable under Chinese law, as required by the Act; (3) there is no reciprocity between China and the United States; and (4) China does not have impartial tribunals that are compatible with the United States' requirements of due process of law.

*Motion to Dismiss Standard*

Defendant argues that Yancheng cannot state a claim for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure. A motion under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). These allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

*Diversity Jurisdiction*

This matter is before the court due to diversity jurisdiction. A federal court sitting in diversity applies the substantive law of the state in which it is sitting. *Protective Life Insurance Co. v. Hansen*, 632 F.3d 388, 392 (7th Cir. 2011).

*The Illinois Uniform Foreign Country Money Judgment Recognition Act*

The Act applies to a foreign country judgment to the extent that the judgment: (1) grants or denies recovery of a sum of money; and (2) under the law of the foreign country where rendered, is final, conclusive, and enforceable. 735 Ill. Comp. Stat. 5/12-663(a). Further, a party seeking recognition of a foreign country judgment, in this case Yancheng, has the burden of establishing that the Act applies to the foreign country judgment. 735 Ill. Comp. Stat. 5/12-663(c).

The Act also spells out certain standards for when a foreign country judgment should *not* be recognized.  Under the Act, a court *may* not recognize a foreign country judgment if: (1) the judgment was rendered under a judicial system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law; (2) the foreign court did not have personal jurisdiction over the defendant; or (3) the foreign court did not have jurisdiction over the subject matter.  735 Ill. Comp. Stat. 5/12-664(b).

Further, a court *need* not recognize a foreign country judgment if: (1) the defendant in the proceeding in the foreign court did not receive notice of the proceeding in sufficient time to enable the defendant to defend; (2) the judgment was obtained by fraud that deprived the losing party of an adequate opportunity to present its case; (3) the judgment or the cause of action on which the judgment is based is repugnant to the public policy of this State or of the United States; (4) the judgment conflicts with another final and conclusive judgment; (5) the proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be determined otherwise than by proceedings in that foreign court; (6) in the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action; (7) the judgment was rendered in circumstances that raise substantial doubt about the integrity of the rendering court with respect to the judgment; or (8) the specific proceeding in the foreign court leading to the judgment was not compatible with the requirements of due process of law.  735 Ill. Comp. Stat. 5/12-664(c).

7

Pursuant to Section 12-664(d), a party resisting recognition of a foreign country judgment, in this case Defendant Kevin Wan, has the burden of establishing that the above grounds for nonrecognition exist.  In this case, Defendant challenges enforcement of the judgment on the grounds that the judgment did not comport with due process because he was never served notice of process (Section 12-664(b)(1), 12-664(c)(1)), it was not a final conclusive judgment (Section 12-663(a)(2)), the Chinese court that rendered the judgment was not a fair and impartial tribunal (Section 12-664(b)(1)), and there is no reciprocity between China and the United States when it comes to enforcement of judgments.

*Insufficient Service of Process*

Defendant first argues that he was not served in the Chinese action, thereby depriving him of the safeguards of due process and rendering the Chinese default judgment unenforceable.  He argues that the Amended Complaint only "vaguely" alleges that he was "summoned by the court[,]" but that there are no allegations regarding how, when, or where he was "summoned," and that there are also no allegations regarding notice of the judgment or its execution.  Defendant points to his affidavit, attached to his motion, wherein he declares that he was not served or given notice of the Chinese proceedings.

Yancheng responds that, based on its allegations, it is reasonable to infer that Defendant had notice of the lawsuit.  Further, Yancheng argues that nowhere in his affidavit did Defendant state that he did not have notice or actual knowledge of the lawsuit against him, only that he was not "served with process."

8

Under Rule 12(b)(5) of the Federal Rules of Civil Procedure, defendants in federal civil suits can assert insufficient service of process as a defense in a motion to dismiss.  It is also a means by which a court, acting in its discretion under the Act, can decline to recognize a foreign court judgment.  735 Ill. Comp. Stat. 5/12-664(c)(1).

In the federal courts, valid service of process is necessary in order to assert personal jurisdiction over a defendant, and "it is well recognized that a 'defendant's actual notice of the litigation ... is insufficient to satisfy [Federal] Rule [of Civil Procedure] 4's requirements.'"  *Mid-Continent Wood Products, Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1991), quoting *Way v. Mueller Brass Company*, 840 F.2d 303, 306 (5th Cir. 1988).

However, Defendant is not challenging whether he was properly served in this instant federal case.  Rather, he is challenging whether he was properly served in the underlying foreign court judgment entered in China.  "Courts of the United States enforce foreign judgments provided that the parties had the opportunity to present their claims to foreign tribunals following procedures designed to secure a sound administration of justice."  *Ma v. Continental Bank, N.A.*, 905 F.2d 1073, 1075 (7th Cir. 1990).  "Although service of process is an ingredient of personal jurisdiction as that term often is used in the United States, not all of the technical requirements of service are sufficient grounds for a collateral attack.  Service is designed to produce knowledge; although rules may and usually do require formal service in order to make very sure of knowledge, and courts may dismiss a case when proper service has not been secured, the sort of jurisdiction pertinent to a collateral attack depends on whether the service is

9

constitutionally adequate—that is, whether the plaintiff uses a method reasonably calculated to produce actual notice." *Ma*, 905 F.2d at 1076.

Here, Yancheng has alleged that Defendant was "summoned" to the Chinese court, and that Defendant, along with his brother, "maintained offices at the Financial Technology Building in Shenzhen City, China" and also "frequently visited and resided in China during this period." Yancheng has also alleged that Kejia Wan did appear in court and was represented by a local attorney. The court finds that these allegations, at this stage of the proceedings, taken as true and *drawing all reasonable inferences therefrom in Yancheng's favor,* sufficiently allege that Defendant was adequately served and had notice of the lawsuit.

Defendant has filed an affidavit attached to his motion averring that he was never served with process in the underlying case, although, as noted by Yancheng, he never states whether or not he had actual notice of the suit. Yancheng has attached documents to its Response concerning Defendant's place of business in Shenzhen City, and the service of process made on Defendant at that address.

The court finds this is a fact-intensive inquiry that will be better suited for summary judgment than a motion to dismiss under Rule 12(b)(6). The court realizes that documents have been attached to and referenced in the briefs, and in certain circumstances the court may consider such documents in its Rule 12(b)(6) ruling without turning it into a motion for summary judgment, provided the documents are central to the complainant's claim. *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). However, the court also has discretion to choose not to consider such documents

10

and to decide the motion purely as one on the pleadings under Rule 12(b)(6).
*Levenstein*, 164 F.3d at 347.  Yancheng has requested to be allowed to submit additional
forms of proof to counter Defendant's affidavit, and the court, in its discretion, agrees
that further discovery will provide more evidentiary background for this issue and help
the court make a more informed decision.  See *Levenstein*, 164 F.3d at 347 ("The district
court, noting that Levenstein wanted further discovery, chose to handle the case as a
straightforward motion to dismiss, rather than converting it to a motion under Rule 56.
It was within its discretion to do so.").  The court would also note that, in the Seventh
Circuit's *Ma* decision, the case was decided at summary judgment, and the Seventh
Circuit had before it sufficient evidence and details so that it had a more complete
picture of how service was made.  *Ma*, 905 F.2d at 1076.

Therefore, Defendant's motion is denied as to the service issue at this time.
However, Defendant may reraise this argument "at a later stage in the litigation when
an appropriate factual record has been assembled and when the applicable procedural
rules permit more fulsome and searching analysis."  See *Peppers v. Credit One Bank N.A.*,
2017 WL 11139919, at *2 (C.D. Ill. Dec. 18, 2017).

*Whether the Chinese Judgment Is Final, Conclusive, and Enforceable*
*Under Chinese Law*

Defendant next argues that Yancheng has not pled sufficient facts that the
Chinese judgment is final, conclusive, and enforceable under the laws of China,
pursuant to Section 12-663(a).  Defendant argues that the allegations are insufficient
because (1) Yancheng does not allege the Chinese judgment is final and appealable
"under Chinese law"; and (2) Defendant can still appeal the judgment under Articles

200 and 269 of the People's Republic of China Civil Procedure Law ("CCPL").

Yancheng responds that it did so plead in the Amended Complaint that the judgment was final under Chinese law, and that neither Article 200 or 269 of the CCPL undermine its claim that the judgment is final.

First, with regard to Defendant's argument on the insufficiency of Yancheng's pleadings, the court agrees with Yancheng.  Paragraph 33 of the Amended Complaint states that [t]he Judgment is final, conclusive, and enforceable *under the law of China*." (Emphasis added).  In addition, at paragraphs 21 through 29 of the Amended Complaint, Yancheng alleged in detail how the judgment was entered, how Defendant was found liable for a sum certain, how Defendant was provided 30 days to appeal the judgment, how Defendant did not appeal the judgment, and how the People's Court of Yancheng Economic and Technological Development Zone recognized the ruling and entered a money judgment against Defendant.  Based on those allegations, Yancheng has sufficiently pled the Chinese judgment is final, conclusive, and enforceable under the laws of China.

Defendant next argues that based on Articles 200 and 269 of the CCPL, the judgment is not final.  Defendant attached the relevant CCPL provisions to its motion. "Courts may take judicial notice of court filings and other matters of public record when the accuracy of those documents reasonably cannot be questioned."  *Parungao v. Community Health Systems, Inc.*, 858 F.3d 452, 457 (7th Cir. 2017).  Yancheng does not contest the accuracy and authenticity of the attached Chinese law code.

First, with respect to Article 269, Defendant argues that a party who is not

12

domiciled in China, like himself, and wishes to appeal but is unable to file a timely

appeal within the ordinary 30-day deadline, may still file a petition to appeal the case,

and thus, the judgment is not "conclusively adjudicated."  That, however, is not exactly

what Article 269 says.  Article 269, found at page 32 of Defendant's Exhibit 2 attached to

the motion states, in full:

> If a party without domicile within the territory of the People's Republic of
> China disagrees with the judgment or ruling rendered by the people's
> court of first instance, he shall have the right to lodge an appeal within 30
> days from the date on which the judgment or ruling is served.  The
> respondent shall file a statement of defense within 30 days after the date
> of receipt of the copy of the appeal petition.  If a party is unable to lodge
> an appeal or submit a defense within the statutory time limit *and applies for
> an extension of the time limit*, the people's court shall decide on the
> application.  (Emphasis added).

Thus, there is nothing in Article 269 stating that a judgment is not final if a party

domiciled outside of China disagrees with the ruling and is unable to lodge an appeal

or submit a defense within the statutory time limit.  All Article 269 does is allow for that

party to apply for an extension of the time limit.  If that party applies for an extension,

then the court shall decide on the application.  There is nothing in the filings to indicate

that Defendant applied for such an extension and that a Chinese court is still

considering the case.

A district court in California considered a similar argument in 2009 when dealing

with the apparently same provision in the CCPL.  The court writes "apparently"

because the Article in question in that case is 249, as opposed to 269.  It is possible the

CCPL has been amended since 2009.  The court wrote:

11. Under article 249 of Part Four of the PRC Civil Procedure Law, a party

not domiciled in China may appeal a judgment of a Chinese court within
30 days of the date the written judgment is served on the party. The party
may also request an extension of time to appeal which request may be
granted at the discretion of the Chinese court. RHC did not appeal the
PRC Judgment within 30 days from the date of service of the PRC
Judgment or at any time, nor did they request an extension of time to
appeal.
12. The PRC Judgment became final, conclusive, and enforceable under
PRC law based on the nature of the PRC Judgment and the exhaustion of
the time period for appeal.

*Hubei Gezhouba Sanlian Industrial Co., Ltd. v. Robinson Helicopter Co., Inc.*, 2009 WL

2190187, at *5 (C.D. Cal. July 22, 2009).

     Therefore, Defendant's Article 269 argument is rejected.

     Turning to Article 200, Defendant argues that under that Article of the CCPL a

party is entitled to a retrial (1) where a default judgment was entered without serving a

summons, or (2) where the party was deprived of his or her right to argue the case in

breach of law.  This argument turns on whether Defendant was properly served with

notice of the Chinese lawsuit.  The court has already determined that for pleading

purposes under Rule 12(b)(6) the Amended Complaint sufficiently alleges that

Defendant was served with notice of the lawsuit, and the issue is best left to ultimate

resolution following discovery.  Thus Defendant's argument under Article 200 is denied

for purposes of the motion to dismiss.  However, as with the issue of whether he was

ever properly served, Defendant may reraise this argument "at a later stage in the

litigation when an appropriate factual record has been assembled and when the

applicable procedural rules permit more fulsome and searching analysis."  See *Peppers,*

14

2017 WL 11139919, at *2.  Defendant's motion is denied on this ground.

*Reciprocity*

Defendant next argues that the Amended Complaint should be dismissed because there is no reciprocity between China and the United States.  Defendant argues that, even though reciprocity is not a *per se* requirement under the Illinois Act, other states have formally adopted and required reciprocity in their versions of the foreign judgments act, and the U.S. Supreme Court's comity analysis from *Hilton v. Guyot*, 159 U.S. 113 (1895), still plays a significant role in the context of foreign judgments.

Yancheng responds that reciprocity is not required under the Illinois Act, the Illinois cases cited by Defendant endorsing comity for foreign judgment recognition are not analogous to this case, and Defendant has not established a lack of comity between China and the United States.

"Comity, in a legal sense, is neither matter of absolute obligation on the one hand nor of mere courtesy and good will on the other, but it is a recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to the international duty and convenience and to the rights of its own citizens who are under the protection of its laws."  *Clubb v. Clubb*, 84 N.E.2d 366, 371 (Ill. 1949), citing *Hilton*, 159 U.S. at 163-64.  "Under the doctrine of comity, courts may, but are not required to, defer to the laws or interests of a foreign country and decline to exercise jurisdiction that is otherwise properly asserted."  *In re Marriage of Murugesh and Kasilingam*, 993 N.E.2d 1109, 1118 (Ill. App. Ct. 2013).

15

Reciprocity is an aspect of comity, derived from *Hilton*, whereby an American court should not recognize a judgment from a foreign country if the foreign country would not enforce a similar American judgment in its courts. *Wilson v. Marchington*, 127 F.3d 805, 811 (9th Cir. 1997), citing *Hilton*, 159 U.S. at 210.

The parties recognize that there is no reciprocity requirement in the Illinois Act. The Illinois Act is modeled, like most states, on the Uniform Foreign Money-Judgments Recognition Act ("Uniform Act"). *Pinilla v. Harza Engineering Co.*, 755 N.E.2d 23, 26 n.2 (Ill. App. Ct. 2001), recognized as superseded by statute in *CE Design Ltd. v. HealthCraft Products, Inc.*, 79 N.E.3d 325 (Ill. App. Ct. 2017)[1]. The Uniform Act rejects the doctrine of reciprocity. *Desjardins Ducharme v. Hunnewell*, 411 Mass. 711, 717 (Mass. 1992); *Bank of Montreal v. Kough*, 612 F.2d 467, 471-72 (9th Cir. 1980) ("the draftsmen of the Uniform Act, upon which CCP ss 1713 Et seq. are framed, consciously rejected reciprocity as a factor to be considered in recognition of foreign money judgments, apparently on the ground that the due process concepts embodied in the Act were an adequate safeguard for the rights of citizens sued on judgments obtained abroad.").

Since the U.S. Supreme Court's *Hilton* decision the reciprocity doctrine has fallen into disfavor, although it has not been entirely disavowed. *Wilson*, 127 F.3d at 812; *Societe dAmenagement et de Gestion de lAbri Nautique v. Marine Travelift Inc.*, 324 F.Supp.3d 1004, 1009 (E.D. Wis. 2018); see also Restatement (Third) of the Foreign

---

[1]The Act was amended in 2012. *CE Design*, 79 N.E.3d at 330 n.1. However, it does not appear to have been amended in any major substantive way on any matter impacting the court's analysis, and there is still nothing in the Act requiring reciprocity.

Relations Law of the U.S. § 481, reporter's note 1 (Am. L. Inst. 1987) ("Notwithstanding that decision, the great majority of courts in the United States have rejected the requirement of reciprocity, both in construing the Uniform Foreign Money Judgments Recognition Act, Introductory Note to this Chapter, and apart from the Act.").

One district court in this circuit, in addressing an argument concerning comity and reciprocity in recognizing foreign judgments, wrote:

> These criteria, however, do not end the analysis for the recognition of a foreign judgment. *Hilton* also holds that reciprocity with regard to the conclusiveness afforded a U.S. judgment in a foreign country is required. However, the rule of reciprocity has been severely criticized. Courts and commentators have almost universally rejected or ignored the doctrine that reciprocity should be required as a precondition to the recognition and enforcement of a foreign country's judgment. *de la Mata* [*v. American Life Ins. Co.*], 771 F.Supp. [1375,] 1382 [D. Del. 1991]. One of the earliest cases that expressly rejected the *Hilton* reciprocity requirement was *Johnston v. Compagnie Generale Transatlantique*, 242 N.Y. 381, 152 N.E. 121 (1926). Section 98 of the Restatement (Second) of the Conflicts of Laws does not require reciprocity. Further, in *Bank of Montreal v. Kough*, 612 F.2d 467 (9th Cir.1980) the Ninth Circuit noted that the drafters of the Uniform Foreign Money Judgment Recognition Act (UFMJR), 13 U.L.A. 261 (1991). consciously rejected reciprocity as a factor to consider in recognition of foreign money judgments. This is apparently on the ground that due process concepts embodied in the Act were an adequate safeguard for the rights of citizens sued on judgments obtained abroad.

*Van Den Biggelaar v. Wagner*, 978 F.Supp. 848, 859 n.12 (N.D. Ind. 1997).

The Seventh Circuit has also recently noted that while *Hilton* instituted a reciprocity requirement, "[s]hortly thereafter, the New York Court of Appeals ... rejected the reciprocity rule[,]" and that "[a]t this point, a majority of U.S. jurisdictions do not require reciprocity." *Saskatchewan Mutual Insurance Co. v. CE Design, Ltd.*, 865

F.3d 537, 542 n.1 (7th Cir. 2017).

Clearly then, the Illinois Act did not include a reciprocity requirement in determining when Illinois courts should enforce a foreign money judgment.  Further, the reciprocity requirement is disfavored in most U.S. jurisdictions, and was specifically rejected as a requirement by the drafters of the Uniform Act, upon which the Illinois Act is modeled.

A federal district court in Illinois rejected a reciprocity argument by a party resisting enforcement of a Belgian judgment under the Illinois Act.  In that case, the plaintiff, Ingersoll, argued "that Belgian courts do not grant full faith and credit to American judgments and that Illinois law requires reciprocity before a foreign money judgment will be enforced."  *Ingersoll Milling Machine Co. v. Granger*, 631 F.Supp. 314, 318 (N.D. Ill. 1986).  The district noted that Illinois courts did not recognize the doctrine of reciprocity and that, while the plaintiff was correct that the Illinois Supreme Court's decision in *Clubb* cited to *Hilton* on reciprocity, the *Clubb* decision was issued before Illinois adopted the Uniform Act.  *Ingersoll Milling*, 631 F.Supp. at 318-19.  The court concluded:

> In fact, the Uniform Foreign Money-Judgments Act, after which the Illinois Uniform Act is modeled, rejected the doctrine of reciprocity. *See Tahan v. Hodgson*, 662 F.2d 862, 867 n. 21 (D.C. Cir.1981). Indeed, "[t]he reciprocity doctrine has been widely criticized and seldom invoked". *Id.* (citing numerous authorities). See also *Cunard Steamship Company Ltd. v. Salem Reefer Services AB*, 773 F.2d 452, 460 (2d Cir.1985) ("reciprocity is not an essential element in granting comity...."). *See generally* Wright, Miller & Cooper, Federal Practice & Procedure, Jurisdiction, § 4473; Annot., 13 A.L.R.Fed. 208, 233.

18

*Ingersoll Milling*, 631 F.Supp. at 319.

The Seventh Circuit affirmed the district court's ruling on reciprocity, writing "Ingersoll also argues that Illinois follows the rule of reciprocity. However, as noted by the district court, the drafters of the Uniform Act chose not to enact a reciprocity requirement." *Ingersoll Milling Machine Co. v. Granger*, 833 F.2d 680, 691 n.7 (7th Cir. 1987).

Defendant cites two Illinois courts that have utilized reciprocity in determining whether a foreign judgment should be recognized in Illinois. However, those cases are of limited value to the question of whether reciprocity should be a determining factor under the Act. Those cases involved family law disputes. Neither case involved a foreign money judgment. In *Parentage of A.H. v. Harlow H.*, 69 N.E.3d 902 (Ill. App. Ct. 2017), a case concerning enforcement of a Thai paternity judgment, the word "reciprocity" was never used, and the court did not apply any reciprocity analysis, but only mentioned in passing that "[r]ecognition of a foreign judgment may be withheld where ... the county in which the decree was rendered does not recognize American decrees[.]" *Parentage of A.H.*, 69 N.E.3d at 906. In the other case, involving recognition of an Indian court divorce decree, the court explicitly noted that the Illinois Uniform Foreign Money Judgments Recognition Act did not apply to divorce cases, and the court would not analyze the case under the Act. *In re Marriage of Murugesh and Kasilingam*, 993 N.E.2d 1109, 1115-16 (Ill. App. Ct. 2013).

Even were the court to apply a reciprocity requirement, the case should not be

19

dismissed.  Defendant has cited to no case, whether state or federal, holding reciprocity should not be granted to Chinese judgments.  Defendant does cite several law review articles detailing China's troubled history with recognizing foreign judgments, and doubts about how China will treat foreign judgments in the future, particularly with current tensions over trade and COVID-19.

However, Yancheng cites an article from the September 6, 2019, China Business Review, in which it is noted that "recent court decisions in China suggest an increase in deference and reciprocity between Chinese and US courts[,]" and that parties who have prevailed in U.S. courts in cases involving Chinese defendants "may be able to enforce those judgments in China."  The article discussed several recent examples of Chinese courts enforcing U.S. court judgments, including an Illinois summary judgment, with the Chinese court finding that U.S. "courts have enforced civil and commercial Chinese judgments multiple times, and therefore, based on reciprocity, Chinese courts may enforce the Illinois judgment."  The article concludes that "[t]here is reason to believe that the trend of Chinese courts recognizing and enforcing US judgments on the basis of reciprocity will continue."  Qing Di and Karen King, *Trending Toward Reciprocity: Enforcement of US Judgments In China*, China Business Review, September 6, 2019, https://www.chinabusinessreview.com/trending-toward-reciprocity-enforcement-of-us-judgments-in-china, (last visited December 22, 2020).

Based on the foregoing, Defendant's reciprocity argument is denied.

*Whether China Has Impartial Tribunals Compatible With U.S. Due Process of Law*

20

Defendant next argues the Amended Complaint must be dismissed because China does not have impartial tribunals that comport with American notions of due process of law.  Defendant argues that China's legal system lacks judicial independence because it is controlled by the Communist Party of China, does not have jury trials, is corrupt, and lacks the credibility and competence to administer justice fairly.

Yancheng responds that American courts have consistently acknowledged the fairness of China's process and enforced Chinese judgments.  Yancheng argues Defendant can cite to no case where an American court has refused to recognize a Chinese judgment on these grounds.

Under the Act, a court may not recognize a foreign country judgment if the judgment was rendered under a judicial system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law.  735 Ill. Comp. Stat. 5/12-664(b)(1).  This is not discretionary.  If this element is not present, the court cannot recognize the foreign judgment.  See *Global Material Technologies, Inc. v. Dazheng Metal Fiber Co. Ltd.*, 2015 WL 1977527, at *7 (N.D. Ill. May 1, 2015).

The Illinois Act is not intended to bar the enforcement of all judgments of any foreign legal system that does not conform its procedural doctrines "to the latest twist and turn of our courts regarding, for example, the circumstances under which due process requires an opportunity for a hearing in advance of the deprivation of a substantive right rather than afterwards."  *Society of Lloyd's v. Ashenden*, 233 F.3d 473, 476 (7th Cir. 2000).  "It is a fair guess that no foreign nation has decided to incorporate

21

our due process doctrines into its own procedural law[,]" so courts are required to interpret "due process" in the Act "to refer to a concept of fair procedure simple and basic enough to describe the judicial processes of civilized nations, our peers." *Society of Lloyd's*, 233 F.3d at 476-77. The Act requires only that the foreign procedure be compatible with the requirements of due process of law, which the Seventh Circuit has interpreted to mean that the foreign procedures are "fundamentally fair" and do not offend against "basic fairness." *Society of Lloyd's*, 233 F.3d at 477.

This standard "is even less demanding than the test the courts use to determine whether to enforce a foreign arbitral award under the New York Convention, 9 U.S.C. § 201 et seq., whose due process defense (that a party lacked "proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case," Article V(1)(b), 9 U.S.C. § 201) has been interpreted to mean the enforcing jurisdiction's concept of due process, albeit a rather minimal such concept." *Society of Lloyd's*, 233 F.3d at 477.

In support of its argument that Chinese courts are not "fundamentally fair" and offend against "basic fairness," Defendant cites to multiple law journal articles. The court would note that the most recent of these articles is from 2013, and the others are all over ten years old. Still, the articles do raise important considerations. China, unlike the United States, is not a representative democracy, but rather is dominated by the Communist Party of China, to whom the courts are beholden, and those courts are subject to various external and internal influences. David T. Wang, *Judicial Reform In*

*China: Improving Arbitration Award Enforcement By Establishing a Federal Court System*, 48 Santa Clara L. Rev. 649, 654 (2008).

On the other hand, some law review articles point to the emergence of due process as China's legal system develops and engages with the world.  See Haibo He, *The Dawn of the Due Process Principle In China*, 22 Colum. J. Asian L. 57 (2008) (stating, in reference to a Chinese court ruling relying on due process principles recommending administrative bodies notify interested third parties of decisions affecting them, "Against the dynamic background of China's legal development, this small step is noteworthy as an example of a Chinese court openly invoking the due process principle without relying on statute.  This ruling both demonstrates the recognition of the due process principle in Chinese legal process and suggests the court's activist stance on due process and the development of administrative law.").

What Defendant lacks, however, is any supportive case law for its argument that China's courts lack basic fairness.  Defendant has cited no case where an American court has refused to enforce a Chinese court judgment, let alone refused to enforce a Chinese court judgment on the basis of whether China's courts are impartial.  The one case cited by Defendant, *Osorio v. Dole Food Co.*, 665 F.Supp.2d 1307 (S.D. Fla. 2009), where a district court refused to enforce a Nicaraguan judgment due to that country's court system not being impartial, was later reversed by the Eleventh Circuit, albeit the Eleventh Circuit specifically declined to address the impartial tribunals issue.  *Osorio v. Dow Chemical Co.*, 635 F.3d 1277, 1278-79 (11th Cir. 2011).

23

In multiple other cases, American courts have enforced Chinese court judgments. "Indeed, U.S. courts consistently acknowledge the adequacy of due process in the [Chinese] judicial system." *Folex Golf Industries, Inc. v. China Shipbuilding Industry, Corp.*, 2013 WL 1953628, at *4 (C.D. Cal. May 9, 2013), reversed on other grounds by *Folex Golf Industries, Inc. v. O-Ta Precision Industries Co., Ltd.*, 603 Fed.Appx. 576 (9th Cir. Mar. 24, 2015), citing *Hubei Gezhouba Salian Indus. Co., Ltd. v. Robinson Helicopter Co., Inc.*, 2009 WL 2190187 (C.D. Cal. July 22, 2009) (recognizing judgment because the Chinese judicial system had afforded the California-based defendant appropriate due process); *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007) (U.S. Supreme Court dismissing case due to alternative forum in China); *China Tire Holdings Ltd. v. Goodyear Tire & Rubber Co.*, 91 F.Supp.2d 1106, 1110 (N.D. Ohio 2000) (concluding that China presented an adequate forum.); *In re Compania Naviera Joanna S.A.*, 531 F.Supp.2d 680 (D.S.C. 2007) (granting petitioners' motion to dismiss on forum non conveniens grounds, concluding that China provides a suitable alternative forum).

In *Sinochem*, the U.S. Supreme Court upheld a district court order that China was the best place, under *forum non conveniens*, to resolve a fraudulent misrepresentation claim that had originally been filed in China. *Sinochem*, 549 U.S. at 435-36 (finding that judicial economy was disserved by being in U.S. district court when proceedings had already been launched in China, "[a]nd the gravamen of Malaysia International's complaint—misrepresentations to the Guangzhou Admiralty Court in the course of securing arrest of the vessel in China—is an issue best left for determination by the

Chinese courts.").  Nowhere in the decision did the Supreme Court cast doubt on the question of the basic fairness of Chinese courts.

In *Global Material Technologies, Inc. v. Dazheng Metal Fibre Co., Ltd.*, 2015 WL 1977527 (N.D. Ill. May 1, 2015), the district court enforced the Chinese judgment under the Illinois Act, finding that the plaintiff had failed to carry its burden of providing the court with any materials suggesting that the Chinese judicial system is problematic in such a way as to preclude recognition of a Chinese judgment.  *Global Material*, 2015 WL 1977527, at *8.  In another case, the district court enforced a Chinese judgment, finding that "Plaintiff has also demonstrated that the Chinese court was an impartial tribunal that had subject matter jurisdiction and personal jurisdiction over Zhang and X. Yu and that both defendants were afforded adequate due process in China."  *Qinrong Qiu v. Hongying Zhang*, 2017 WL 10574227, at *3 (C.D. Cal. Oct. 27, 2017).  Finally, a New York state court enforced a Chinese judgment, concluding that "Plaintiff's submissions demonstrate that the Chinese legal system comports with the due process requirements and the public policy of New York."  *Huizhi Liu v. Guoqing Guan and Xidong Fang*, N.Y. Sup. Ct., Queens County, Jan. 7, 2020, Butler, J., index No. 713741/2019.

Based on the above, the court concludes that Defendant has not carried his burden in demonstrating the Chinese judgment was not rendered by an impartial tribunal, and that Chinese courts do not comport with a sense of basic farness under due process.  See *Global Material*, 2015 WL 1977527, at *8.  Defendant's motion is denied on this ground.

25

2:20-cv-02198-CSB-EIL   # 13   Page 26 of 26

IT IS THEREFORE ORDERED:

(1)     Defendant's Motion to Dismiss (#8) is DENIED.

(2)     This case is referred to the magistrate judge for further proceedings in

        accordance with this Order.

ENTERED this 8th day of January, 2021.


                        s/ COLIN S. BRUCE
                        U.S. DISTRICT JUDGE