UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **YANCHENG SHANDA YUANFENG EQUITY INVESTMENT PARTNERSHIP,**<br><br>**Plaintiff,**<br><br>v.<br><br>**KEVIN WAN,**<br><br>**Defendant.** | Case No. 20-2198 |

### REPORT AND RECOMMENDATION

This case is before the Court on Plaintiff Yancheng Shanda Yuanfeng Equity Investment Partnership's ("Plaintiff" or "Yancheng Shanda") Motion for Summary Judgment on Jurisdiction and Memorandum in Support (#109).[1] Defendant Kevin Wan ("Defendant") filed a Response (#112) in opposition. Plaintiff filed a Reply (#113). For the reasons discussed below, the Court recommends that the District Court find that it has subject matter jurisdiction over this dispute based on the presence of complete diversity of citizenship between the adverse parties required by 28 U.S.C. § 1332(a).

### I.   Background

####   A.   Procedural Background

Plaintiff filed a contract claim against Defendant in a Chinese court in May 2019. After Plaintiff failed to appear, the Chinese court entered a default judgment against Plaintiff. In July 2020, Plaintiff filed its Complaint (#1) in the United States District Court, asking the Court to enforce the Chinese judgment under the Illinois Foreign Judgment

---

[1] While Plaintiff has styled its Motion as a Motion for Summary Judgment, "the question of jurisdiction is inappropriate for summary judgment." *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993). "Whereas a grant of summary judgment is a decision on the merits . . . a court must dismiss the case without ever reaching the merits if it concludes that it has no jurisdiction." *Id.*

1

Recognition Law. Plaintiff asserted subject matter jurisdiction based on diversity jurisdiction.

The District Court granted Plaintiff's Motion for Summary Judgment (#27), which Defendant appealed. The Appellate Court found that "the factual predicates for the district court's jurisdiction" were "not established firmly in the existing record[.]" *Yancheng Shanda Yuanfeng Equity Inv. P'ship v. Wan*, 59 F.4th 262, 264 (7th Cir. 2023). Accordingly, the Appellate Court vacated the District Court's judgment, remanded the case, and instructed as follows:

> On remand, the district court must first address whether Yancheng Shanda's partners can be characterized as corporations and, if so, the jurisdiction of their incorporation and of their principal place of doing business. If the district court determines that these entities do not qualify as corporations under the diversity statute, the court must treat them as partnerships. Because partnerships take the citizenship of each of their partners, the court must identify each partner's citizenship.
>
> Finally, the district court must address particular questions about one of the partners, Jiangsu Zhonghan, and its six state or state-owned entity owners. If this entity is directly and majority-owned by a "foreign state or political subdivision thereof," it is itself a "foreign state" for purposes of federal jurisdiction. 28 U.S.C. §§ 1332(a)(4), 1603(a), (b)(2); *Dole Food Co. v. Patrickson*, 538 U.S. 468, 473–77 (2003). In its amended complaint, Yancheng Shanda alleged that Jiangsu Zhonghan is owned by six Chinese state or state-owned entities, but the record contains no evidence of the breakdown of their ownership interests. A finding that Jiangsu Zhonghan (if it is treated as a corporation) or one of its owners (if it is instead treated as a partnership) is a "foreign state" would require confronting Mr. Wan's argument that Yancheng Shanda—being a partnership whose partners include both "citizens" of a foreign state and a "foreign state"—cannot invoke diversity jurisdiction because no provision of § 1332 explicitly applies to such a "hybrid" entity. *But see Ruggiero v. Compania Peruana de Vapores Inca Capac Yupanqui*, 639 F.2d 872, 875–77 (2d Cir. 1981). The district court should require the parties to address the specific nature of each of the component entities in Jiangsu Zhonghan and determine whether Jiangsu Zhonghan or the relevant component entity is directly and majority-owned by a "foreign state or political subdivision thereof." In light of these findings, it should then evaluate Mr. Wan's arguments concerning the applicability of § 1332.

*Id.* at 269-70.

2

B. **Factual Background**

The following background facts are taken from the undisputed material facts contained in the parties' briefs.

Defendant is an American citizen, a citizen of Illinois, and currently resides and is domiciled in Champaign, Illinois. Thus, Defendant is a citizen of Illinois under 28 U.S.C. § 1332.

Plaintiff is a limited partnership organized under the laws of China with its principal place of business in China. (#109-1 Ex. 1, ¶ 11).

Yancheng Shanda Yuanfeng Equity Investment Partnership's partners are 1) Shanghai Shanda Investment Management Co., Ltd., 2) Jiangsu Yueda Shanda Equity Investment Fund Management Co., Ltd., 3) Ningbo Yueda Shanda Investment Management Co., Ltd. and 4) Jiangsu Zhonghan Yancheng Industrial Park Investment Co., Ltd. (#109-1 Ex. 1 at ¶ 12). Each partner owns the following percentages: Shanghai Shanda Investment Management Co., Ltd. (0.97%), Jiangsu Yueda Shanda Equity Investment Fund Management Co., Ltd. (36.03%), Ningbo Yueda Shanda Investment Management Co., Ltd. (14.31%), and Jiangsu Zhonghan Yancheng Industrial Park Investment Co., Ltd. (48.69%). (#109-1 Ex. 1 at ¶ 13; #109-1G).

An English translation of the Company Law of China is included as Exhibit 1A to Plaintiff's Motion for Summary Judgment. (#109-1 at ¶ 14). Pursuant to Article 2 of the Company Law of China, the Company Law of China governs two entities under Chinese law: "limited liability companies" and "companies limited by shares." (#109-1 Ex. 1 at ¶ 15; #109-1A, Article 2).

A copy of the articles of association for each of the four partners is included as Exhibit 1B, and English translations of each are provided as Exhibits 1C, 1D, 1E and 1F. (#109-1 at ¶ 16). Each of the partners has their principal place of business in China. (#109-1 at ¶ 17; #109-1B). Each of the partners is a company organized under the Company's Law of China with the following characteristics:

- Each of these companies is a Chinese limited liability company ("LLC") incorporated under the Company's Law of China with its principal place of business in China;
- Each of these companies is owned by its shareholders;
- Each of these companies is a separate legal person under Article 3 of the Company's Law of China;
- Shares of each of these companies can be bought and sold, subject to restrictions the business declares pursuant to Article 71 of the Company's Law of China; and
- Each of these companies has shareholders whose liability is limited only to the amount of capital contributed pursuant to Article 3 of the Company's Law of China.

(#109-1 at ¶ 18; #109-A (Articles 3, 71); #109-1B).

Attached as Exhibit 1G is a true and accurate detailed equity structure of Yancheng Shanda as of the time the lawsuit was filed. (#109-1 at ¶ 10). Also included in Exhibit 1G is a true and accurate detailed equity structure of Yancheng Shanda currently. (#109-1 at ¶ 10).

Shanghai Shanda Investment Management Co., Ltd. is a Chinese LLC organized under the laws of China and with its principal place of business in China with ownership as follows:

- At the time this lawsuit was filed, Shanghai Shanda Investment Management Co., Ltd. had five individuals as owners, each of whom is an individual who is a citizen of China and who is domiciled in China: Zhu Junmei (40%), Wu Changchun (29%), Su Shouliang (15%), Fu Qimei (15%) and Zhou Jiong (1%).
- After this lawsuit was filed, the ownership shares of Su Shouliang (15%), Fu Qimei (15%) and Zhou Jiong (1%) were transferred to Shanghal Qineryue Enterprise Management Partnership (Limited Partnership).
- Shanghal Qineryue Enterprise Management Partnership (Limited Partnership) is a limited partnership organized under the laws of China with five partners,

4

Zhu Junmel, Han Lu, Wu Jinhai, Wang Shenge and Wu Changchun, each of whom is an individual who is a Chinese citizen and who is domiciled in China. The shares held by the partners are as follows: Zhu Junmei (59%), Han Lu (20%), Wu Jinhai (10%), Wang Shenge (10%) and Wu Changchun (1%).

(#109-1 at ¶ 19; #109-1C; #109-1G).

Jiangsu Yueda Shanda Equity Investment Fund Management Co., Ltd. is a Chinese LLC organized under the laws of China and with its principal place of business in China with its ownership as follows both currently and at the time this lawsuit was filed is as follows:

- The owners are Yueda Capital Co., Ltd. (40%), Shanghai Shanda Investment Management Co., Ltd. (50.01%) and Wu Changchun (9.99%).
- Yueda Capital Co. Ltd is a "company limited by shares" under the Company Law of China, with its principal place of business in China. The owners are as follows: Jiangsu Yueda Group Co., Ltd. (78.53%), Yueda Real Estate Group Co., Ltd. (1.6%) and Yancheng Yongtai Investment Development Co., Ltd. (19.87%).
  - Jiangsu Yueda Group Co., Ltd. is a Chinese company. According to Company Law of China, it is a "limited liability company" with its principal place of business in China. Its shareholders are Yancheng Municipal People's Government and Jiangsu Provincial Department of Finance.
  - Yueda Real Estate Group Co., Ltd. is a Chinese company and a "limited liability company" under the Company Law of China. The owners are as follows: Jiangsu Lvyang Transportation Construction Group Co., Ltd., Yueda Group (H.K.) Co., Ltd. and Yancheng Century New Town Estate Development Co., Ltd.
  - Jiangsu Lvyang Transportation Construction Group Co., Ltd. is a Chinese company and a "limited liability company" under the Company Law of China, with its principal place of business in China and its shareholder is Yancheng Transportation Holding Group Co., Ltd.

5

- Yancheng Transportation Holding Group Co., Ltd. is a Chinese company and a "limited liability company" under the Company Law of China, with its principal place of business in China and its shareholder is Yancheng Transportation Investment and Construction Holding Group Co., Ltd. Yancheng Transportation Investment and Construction Holding Group Co., Ltd. is a Chinese company and a "limited liability company" under the Company Law of China, with its principal place of business in China and its shareholder is Yancheng Municipal People's Government.

- Yueda Group (H.K.) Co., Ltd. is a Chinese company incorporated in Hong Kong. According to the Hong Kong Companies Ordinance, it is a "private company" with its principal place of business in Hong Kong. Its shareholder is Jiangsu Yueda Group Co., Ltd., the company listed above.

- Yancheng Century New Town Estate Development Co., Ltd. is a Chinese company and a "limited liability company" under the Company Law of China, with its principal place of business in China and its shareholder is Jiangsu Century New City Investment Holding Group Co., Ltd. Jiangsu Century New City Investment Holding Group Co., Ltd. is a Chinese company and a "limited liability company" under the Company Law of China, with its principal place of business in China and its shareholder is Yancheng Municipal People's Government.

- Shanghai Shanda Investment Management Co., Ltd. is the company listed above.

- Wu Chanchun is an individual who is a citizen of China and is domiciled in China.

(#109-1 at ¶ 20; #109-1D; #109-1G).

Ningbo Yueda Shanda Investment Management Co., Ltd. is a Chinese LLC organized under the laws of China and with its principal place of business in China with the following owners:

- The owners at the time the lawsuit was filed were Jiangsu Yueda Shanda Equity Investment Fund Management Co., Ltd. (50%), Shanghai Shanda Investment Management Co., Ltd. (40%) and Wu Changchun (10%).
- After the litigation of this case took place, Jiangsu Yueda Shanda Equity Investment Fund Management Co., Ltd. transferred its equity to Shanghai Shanda Investment Management Co., Ltd. and Shenzhen Yumingrui Enterprise Management Partnership (L.P.) respectively, and the current owners are as follows: Shanghai Shanda Investment Management Co., Ltd., Shenzhen Yumingrui Enterprise Management Partnership (L.P.) and Wu Changchun.
- Wu Changchun is an individual who is a Chinese citizen and is domiciled in China.
- Jiangsu Yueda Shanda Equity Investment Fund Management Co., Ltd. was a Chinese LLC organized under the laws of China and with its principal place of business in China with the following owners: Wu Changchun, Shanghai Shanda Investment Management Co., Ltd. and Yueda Capital Co., Ltd.
- Shanghai Shanda Investment Management Co., Ltd. is the company listed above.
- Shenzhen Yumingrui Enterprise Management Partnership (L.P.) is a limited partnership established in accordance with the laws of China. It has two partners, Zhou Qi (90%) and Xu Peili (10%), who are citizens of China and are domiciled in China.
- Yueda Capital Co., Ltd. is the company listed above.

(#109-1 at ¶ 21; #109-1E; #109-1G).

Jiangsu Zhonghan Yancheng Industrial Park Investment Co., Ltd. is an LLC organized under the laws of China and with its principal place of business in China with the following owners both currently and at the time this lawsuit was filed.

- The owners are Jiangsu Provincial Government Investment Fund (50%), Yancheng Yongtai Investment Development Co., Ltd. (25%), Jiangsu Huanghai Financial Holding Group Co., Ltd. (12.5%), Yancheng District South Of The City Development And Construction Investment Co., Ltd. (5%), Yancheng Dafeng District Urban Construction Group Co., Ltd. (5%), and Yancheng Finance Bureau (2.5%).
- Jiangsu Provincial Government Investment Fund is a limited partnership organized under the laws of China with its principal place of business in China. This partnership is owned equally by the Jiangsu Provincial Finance Bureau, which is a political subdivision of China, and the Jiangsu Jincai Investment Co., Ltd., which is wholly owned by Jiangsu Provincial Finance Bureau, a political subdivision of China.
- Yancheng Yongtai Investment Development Co., Ltd. is a Chinese LLC organized under the laws of China and with its principal place of business in China with the following owners: Yancheng Dongfang Investment Company (53.7%) and Jiangsu Century New City Investment Holding Group Co., Ltd (46.3%), each of which is wholly owned by the Yancheng Municipal People's Government, a political subdivision of China.
- Jiangsu Huanghai Financial Holding Group Co., Ltd. is a Chinese LLC organized under the laws of China and with its principal place of business in China owned 100% by Yancheng Municipal People's Government, a political subdivision of China.
- Yancheng District South Of The City Development And Construction Investment Co., Ltd. is a Chinese LLC organized under the laws of China and with its principal place of business in China owned by Yancheng Municipal People's Government, a political subdivision of China.

8

- Yancheng Dafeng District Urban Construction Group Co., Ltd. is a Chinese LLC organized under the laws of China and with its principal place of business in China and owned 100% by Yancheng Dafeng District People's Government, a political subdivision of China.
- Yancheng Finance Bureau is a political subdivision of China.

(#109-1 at ¶ 22; #109-1F; #109-1G).

The preceding entities identified as a political subdivision of China are subdivisions of the Chinese government. Municipalities are the provincial level of the Chinese government. Districts are in the county level within the Chinese government. (#109-1 at ¶ 23).

63% of Plaintiff is owned by political subdivisions of China and the remaining 37% is ultimately owned by individual citizens of China. (#109- 1G.4). Jiangsu Zhonghan Yancheng Industrial Park Investment Co., Ltd. owns 48.69% of Yancheng Shanda and is ultimately 100% owned by government subdivisions of China. Jiangsu Yueda Shanda Equity Investment Fund Management Co., Ltd. owns 36.03% of Yancheng Shanda and is 40% owned by Ueda Capital CO., Ltd., which is ultimately 100% owned by government subdivisions of China. All remaining entities are ultimately owned by individual citizens of China.[2]

II.     **Legal Standard**

This matter is before the Court on remand from the Seventh Circuit to address the question of subject matter jurisdiction. "Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further." *Illinois v. City of Chicago,* 137 F.3d 474, 478 (7th Cir. 1998). "Article III of the Constitution extends the 'judicial Power' to nine specified categories of Cases and Controversies, including Controversies 'between Citizens of different States.' " *Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 633 (7th Cir. 2021). "When this constitutional Article III jurisdiction

---

[2] Defendant concedes Plaintiff's equity structure is material and concedes the accuracy of the percentage ownership attributed to each equity holder as reflected in the equity structure chart attached as Exhibit 1G. However, Defendant disputes the materiality of Plaintiff's characterization of "ultimate ownership" by political subdivisions of China.

covers 'Controversies between citizens of different States,' and arises under state substantive law, the federal diversity jurisdiction statute, 28 U.S.C. § 1332 ('diversity statute') limits this jurisdiction." *Id.* (citing *Page*, 2 F.4th at 633).

Under the diversity statute, the state citizenship of all plaintiffs must differ from that of all defendants." *Galaxy Precision Mfg., Inc. v. Grupo Indus. San Abelardo S.A. de C.V.*, 2022 WL 1908978, at *2 (N.D. Ill. June 3, 2022). "This requirement is called 'complete diversity,' 28 U.S.C. § 1332(a), and the burden of establishing it belongs to the party claiming that the Court can exercise original federal subject matter jurisdiction over the case based on the diversity statute." *Id.* (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010)).

"When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof." *Hertz Corp.*, 559 U.S. at 96–97. When considering whether jurisdiction exists, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Dig., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (alteration in original) (citations and internal quotation marks omitted).

"[A] corporation is a citizen of both its state of incorporation and the state in which it maintains its "principal place of business.' " *Page*, 2 F.4th at 635 (citing 28 U.S.C. § 1332(c)(1)). For other forms of business associations—partnerships or other unincorporated entities such as limited liability companies—citizenship is determined by the citizenship of every individual partner or member. *Id.*

### III. Analysis

#### A. Yancheng Shanda's Partners

Following the Seventh Circuit's direction, the Court will first address whether Yancheng Shanda's partners can be characterized as corporations and, if so, the jurisdiction of their incorporation and of their principal place of doing business. If these

entities do not qualify as corporations under the diversity statute, then the Court will treat them as partnerships and drill down accordingly.

The parties agree that Plaintiff is a limited partnership organized under the laws of China with its principal place of business in China. (#109-1 at 4). Because partnerships take the citizenship of each of their partners, *Page*, 2 F.4th at 635, the Court must identify each partner's citizenship. Yancheng Shanda's partners are (1) Shanghai Shanda Investment Management Co., Ltd., (2) Jiangsu Yueda Shanda Equity Investment Fund Management Co., Ltd., (3) Ningbo Yueda Shanda Investment Management Co., Ltd. and (4) Jiangsu Zhonghan Yancheng Industrial Park Investment Co., Ltd.  (#109-1 at 4).

According to Plaintiff, all these entities are the equivalent of an American corporation.  "Whether a foreign business entity should be treated as a corporation for jurisdictional purposes depends on whether it 'has attributes sufficiently similar to those of a corporation organized in the United States.' " *Flextronics International USA, Inc. v. Sparkling Drink Sys. Innovation Center Ltd.*, 186 F. Supp. 3d 852, 860 (N.D. Ill. 2016) (quoting *InStep Software LLC v. Instep (Beijing) Software Co.*, 577 Fed. Appx. 612, 613 (7th Cir. 2014)). These attributes include "[1] indefinite existence, [2] personhood (the right to contract and litigate in [the organization's] own name), [3] limited liability for equity investors, and [4] alienable shares," *Fellowes, Inc. v. Changzhou Xinrui Fellowes Office Equip. Co.*, 759 F.3d 787, 788 (7th Cir. 2014), as well as (5) governance by a board of directors and (6) particulars relating to tax treatment such as taxability on profits. *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003).

In support of jurisdiction, Plaintiff submitted a copy of relevant Chinese law, the Company Law of China. The Company Law of China governs "companies," which refers to "limited liability companies" and "companies limited by shares." (#109-1 at 13, Article 2). As to indefinite existence, the Company Law of China allows Chinese LLCs to specify a term of years or allow for continual existence. (#109-1 at 42, Article 73). As to personhood, a Chinese company "is an enterprise legal person, which has independent corporate property and enjoys corporate property rights." (#109-1 at 13, Article 3). As to shareholder limited liability, "a shareholder of a company limited by shares shall be liable

for the company to the extent of the shares it subscribes." (#109-1 at 41, Article 71). As to alienability of shares, shareholders "may transfer all or part of their equity interests" subject to restrictions (#109-1 at 13, Article 3). As to governance, Chinese companies may establish a board of directors or an executive director. (#109-1 at 28, Article 4). As to taxes, the Company Law of China is silent regarding tax treatment of the partners' profits.

Plaintiff also submitted a declaration by its employee, Wu Jinhai ("the Declaration"). The Declaration states that "[e]ach of these companies is a separate legal person under Article 3 of the Company's Law of China," that "[s]hares of each of these companies can be bought and sold, subject to restrictions the business declares pursuant to Article 71 of the Company's Law of China," and that "[e]ach of these companies has shareholders who enjoy liability limited only to the amount of capital contributed pursuant to Article 3 of the Company's Law of China." (#109-1 at 5).

Plaintiff also submitted each partner's article of association. The first partner is Shanghai Shanda Investment Management Co., Ltd. As to perpetual existence, Shanghai Shanda has "long term" business operation, the meaning of which is unexplained. (#109-1 at 144, Article 33). As to personhood, Shanghai Shanda was issued a "Business License of Enterprise Legal Person." (#109-1 at 144, Article 33). As to alienable shares, the article of association allows for the transfer of shares subject to restrictions. (#109-1 at 143, Article 25). As to type of governance, Shanghai Shanda is governed by a Board of Directors. (#109- at 140, Article 14). As to tax treatment, the evidence fails to indicate tax treatment of the partners' profits.

Limited liability is not addressed directly. While the article of association appears silent as to shareholder limited liability, it states that "[in] the event of any discrepancy between the terms of the Article of Association and laws, regulations and rules, the provisions of laws, regulations and rules shall prevail." (#109-1 at 146, Article 42). The article of association is subject to the Company Law of China, (#109-1 at 138), which states that a shareholder of a limited liability company shall be "liable for the company to the extent of the capital contribution it subscribes." (#109-1 at 14, Article 3). The Declaration affirms Shanghai Shanda has shareholder liability limited to the amount of capital

12

contributed. (#109-1 at 3). Thus, sufficient evidence shows Shanghai Shanda has shareholder liability limited to the amount of capital contributed.

The second partner is Jiangsu Yueda Shanda Equity Investment Fund Management Co., Ltd. As to perpetual existence, Jiangsu Yueda's term is 20 years. (#109-1 at 107, Article 33). As to personhood, Jiangsu Yueda was issued a "Business License of Enterprise Legal Person" (#109-1 at 107, Article 33). As to limited liability for equity investors, Jiangsu Yueda has shareholder liability limited to the amount of capital contributed. (#109-1 at 101, Article 9). As to alienable shares, Jiangsu Yueda allows for the transfer of shares subject to certain restrictions. (#109-1 at 105-106, Article 26). As to type of governance, Jiangsu Yueda is governed by a Board of Directors. (#109-1 at 102, Article 15). As to tax treatment, the evidence fails to indicate tax treatment of the partners' profits.

The third partner is Ningbo Yueda Shanda Investment Management Co., Ltd. As to perpetual existence, Ningbo Yueda is declared to have "long term" business operation, the meaning of which is unexplained. (#109-1 at 154, Article 23). As to personhood, Ningbo Yueda is considered a "legal person." (#109-1 at 151, Article 9). As to limited liability for equity investors, shareholder liability is limited to the amount of capital contributed. (#109-1 at 149, Article 2). As to alienable shares, Ningbo Yueda allows for the transfer of shares subject to restrictions. (#109-1 at 154, Article 20). As to type of governance, Ningbo Yueda is not governed by a Board of Directors, but rather by an Executive Director. (#109-1 at 155, Article 13). As to tax treatment, the evidence fails to indicate tax treatment of the partners' profits.

The fourth partner is Jiangsu Zhonghan Yancheng Industrial Park Investment Co. Ltd. As to perpetual existence, Jiangsu Zhonghan's term is 15 years. (#109-1 at 117, Article 6). As to personhood, Jinagsu Zhonghan "registered and received the business license of enterprise legal person." (#109-1 at 117, Article 6). As to limited liability for equity investors, Jinagsu Zhonghan has shareholder liability limited to the amount of capital contributed. (#109-1 at 130, Article 55). As to alienable shares, Jinagsu Zhonghan allows for the transfer of shares subject to restrictions. (#109-1 at 119-120, Article 12). As to type of governance, Jiangsu Zhonghan is not governed by a Board of Directors, but rather by

an Executive Director. (#109-1 at 124, Article 23). As to tax treatment, the evidence fails to indicate tax treatment of the partners' profits.

In summary, Shanghai Shanda and Jiangsu Yueda possess four of the six relevant attributes: personhood, shareholder limited liability, alienable shares subject to restrictions, and governance by a board of directors. Ningbo Yueda and Jiangsu Zhonghan are not governed by a board of directors but possess three attributes: personhood, shareholder limited liability, and alienable shares subject to restrictions. As to perpetual existence, Shanghai Shanda has "long term" business operation, Jiangsu Yueda has a 20-year term, Ningbo Yueda have "long term" business operation, and Jiangsu Zhonghan has a 15-year term. As to tax treatment, the evidence fails to indicate tax treatment of the partners' profits.

Each of these entities has sufficient traits consistent with a corporation to treat it as a corporation. In *BouMatic, LLC v. Idento Operations, BV*, the Seventh Circuit found that a Netherlands business was a corporation for diversity purposes. 759 F.3d 790, 791 (7th Cir. 2014). The Court reasoned that Netherlands business "has the standard elements of 'personhood' (perpetual existence, the right to contract and do business in its own name, and the right to sue and be sued)"; it "issues shares to investors who enjoy limited liability (which is to say, are not liable for the business's debts)"; and its "[s]hares can be bought and sold, subject to restrictions that the business declares"—all common traits "in this nation's close corporations." *Id.*

Like in *BouMatic,* the four partners here possess personhood, shareholder limited liability, and alienability of shares subject to restrictions. While the partners appear to lack perpetual existence, the shareholders can extend each of the company's terms. (#109-1 at 83, Article 181). Further, "a perpetual existence is not always a requirement of corporate existence." *InStep Software LLC v. InStep (Beijing) Software Co.*, 2015 WL 5174048, at *3, 4 (N.D. Ill. Sept. 2, 2015) (finding that a Chinese entity that had the same form as an LLC, had a 20-year term of operation, and allowed for the board to extend its existence was a corporation for diversity purposes). Given these attributes, each of these foreign business entities should be treated as a corporation for jurisdictional purposes.

14

Defendant argues that Plaintiff has failed to cite any case concluding that Chinse LLCs are by definition the same as U.S. corporations, that caselaw demonstrates Chinese LLCs may be similar to U.S. corporations or may not be depending on the case, and that Plaintiff's equity structure and articles of association show Plaintiff possesses attributes different from a corporation. In support, Defendant offers seven points.

First, Defendant notes that Plaintiff's partners are organized as "limited liability companies" under Chinese law. This point is unconvincing because cases like *BouMatic* show that an entity's form, rather than title, is what is important.

Second, Defendant notes that six or fewer equity holders own each of Plaintiff's partners and appear again in higher tiers. This, however, is not a relevant factor, as many closely held entities qualify as corporations.

Third, Defendant notes that Plaintiff's partner companies appear to lack perpetual existence. As noted above, the shareholders can extend each of the company's terms (#109-1 at 83, Article 181), and "a perpetual existence is not always a requirement of corporate existence." *InStep Software LLC*, 2015 WL 5174048, at *3, 4.

Fourth, Defendant notes that restrictions exist on transferring shares, specifically that shares are subject to a right of first refusal. However, a similar restriction existed in *BouMatic*, 759 F.3d at 791 (noting that Netherlands LLCs are "closely held businesses whose shares are subject to a restriction of some kind, such as a buy-sell agreement that prevents investors from selling to strangers without offering them to the business first.").

Fifth, Ningbo Yueda and Jiangsu Zhonghan are governed by a single executive director rather than a board of directors. While a board of directors normally governs LLCs, Article 50 of the Company Law of China states that "[a] limited liability company with comparatively few shareholders or comparatively small in scale may have one executive director instead of a board of directors. The executive director may concurrently serve as the manager of the company." (#109-1 at 33, Article 50). Such companies still must have a "Board of Shareholders" that govern them. (#109-1 at 26, Article 36). The U.S. has similar laws that do not require closely held corporations to have a board of directors. *See, e.g.,* 805 ILCS 5/2A.45 (Illinois); 8 Del. § 351 (Delaware). Additionally, certain states

15

allow a single individual to serve as a corporation's sole director and executive. 8 Del. § 141(b) (Delaware); NV Rev Stat §78.115 (Nevada).

Sixth, Defendant argues that Plaintiff fails to sufficiently indicate tax treatment regarding its partner's profits to determine whether this attribute is more like a corporation or an unincorporated business entity. While further evidence regarding tax treatment is lacking, whether a foreign business entity should be treated as a corporation for jurisdictional purposes does not depend on it possessing identical attributes to a U.S. corporation, but rather, "attributes *sufficiently similar* to those of a corporation organized in the United States." *InStep Software LLC*, 577 Fed. Appx. at 613 (emphasis added). As noted above, like in *BouMatic,* the four partners here possess personhood, shareholder limited liability, and alienability of shares subject to restrictions, and they can extend their term of years indefinitely.

Next, Defendant argues that this Court's analysis requires more than the summary descriptions Plaintiff advances through the Company Law of China, Declaration, and articles of association. In *Lear Corp.*, the Seventh Circuit found that a Bermuda "limited" organization should be treated as a corporation for diversity jurisdiction purposes. 353 F.3d at 583. The court relied on the Bermuda's Companies Act 1981, which showed that "a business organization 'limited by shares' under Bermuda law [was] equivalent in all legally material respects to corporation under state law." *Id.* Similarly, in *Flextronics Int'l USA, Inc.*, the court found that two Hong Kong "limited companies" should be treated as corporations for diversity jurisdiction purposes. 186 F. Supp. 3d at 860. In support, the court relied on the articles of incorporation. *Id.* The court also relied on Zhao Yong Qing, *The Company Law of China*, 6 Ind. Int'l & Comp. L. Rev. 461, 470 (1996) ("An LLC under [China's] Company Law is similar to a private company limited under the laws of Britain, Hong Kong, and Singapore and a closed corporation under U.S. law."). Like the plaintiffs in *Lear Corp* and *Flextronics Int'l USA, Inc*, Plaintiff sufficiently produced Chinese law, the Declaration, and articles of incorporation as evidence in support of its position. In this Court's opinion, this is enough.

16

Finally, Defendant argues Plaintiff has failed to describe the specific attributes of other entities in the equity structure and explain how they are like U.S. corporations. This argument lacks merit. If the Chinese LLCs at issue here are treated as corporations, other entities up the ownership chain are irrelevant.

Based on the attributes that each partner possesses, the Court recommends the District Court find that each of Plaintiff's partners possesses attributes sufficiently similar to those of a United States corporation and should be considered corporations for diversity purposes.

"[A] corporation is a citizen of both its state of incorporation and the state in which it maintains its "principal place of business.' " *Page*, 2 F.4th at 635 (citing 28 U.S.C. § 1332(c)(1)). Each of Plaintiff's partners is organized under the laws of China with its principal place of business in China. (#109-1 at 5). Each partner, therefore, is a citizen of China for jurisdictional purposes. Accordingly, because partnerships take the citizenship of each of their partners, *Page*, 2 F.4th at 635, and each of Plaintiff's partners is a citizen of China, the Court recommends that the District Court find Plaintiff is a citizen of China for jurisdictional purposes.

**B.    Jiangsu Zhonghan**

Next, the Court will evaluate Jiangsu Zhonghan for potential status as a "foreign state" under §§ 1332(a)(4) and 1603(a). As the Seventh Circuit noted, "[i]f this entity is directly and majority-owned by a 'foreign state or political subdivision thereof,' it is itself a 'foreign state' for purposes of federal jurisdiction." 59 F.4th at 269. 28 U.S.C. § 1332(a)(4) provides jurisdiction in disputes between "a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States." A "foreign state" is "a political subdivision of a foreign state or an agency or instrumentality of a foreign state[.]" 28 U.S.C. §1603(a).

An "agency or instrumentality of a foreign state" means any entity—

(1) which is a separate legal person, corporate or otherwise, and

>  (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
>
>  (3) which is neither a citizen of a State of the United States . . . nor created under the laws of any third country.

28 U.S.C. § 1603(b).

As stated earlier, Jiangsu Zhonghan is sufficiently similar to an American corporation to be treated as a corporation for jurisdictional purposes.[3] Given this, the Court must determine whether Jiangsu Zhonghan is directly majority-owned by a foreign state or political subdivision thereof. If so, it is a "foreign state" for purposes of federal jurisdiction. 28 U.S.C. §§ 1332(a)(4), 1603(a), (b)(2); *Dole Food Co. v. Patrickson*, 538 U.S. 468, 473–77 (2003).

Here, six different entities own the shares of Jiangsu Zhonghan, and only one of these—Yancheng Finance Bureau, who owns 2.5%—is itself a political subdivision of China. (#109-1G). While the remaining entities are ultimately owned by subdivisions of China, they are not themselves subdivisions of China. Thus, only 2.5% of Jiangsu Zhonghan is directly owned by a political subdivision of China.

The Court does not need to inquire into the underlying ownership interests for Jiangsu Zhonghan's other "component entities" to determine whether those component entities qualify as foreign state or political subdivisions thereof. In *Dole Food*, the Supreme Court considered "whether a corporate subsidiary can claim instrumentality status where the foreign state does not own a majority of its shares but does own a majority of the shares of a corporate parent one or more tiers above the subsidiary." 538 U.S. at 471. The Court explained:

> A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities. An individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets and, as a result, does not own subsidiary corporations in which the corporation holds an interest. A corporate parent which owns the shares of a subsidiary does

---

[3] Accordingly, the Court need not evaluate whether a partnership that consists of partners including both "citizens of a foreign state" and a "foreign state" can qualify for diversity jurisdiction.

> not, for that reason alone, own or have legal title to the assets of the subsidiary; and, it follows with even greater force, the parent does not own or have legal title to the subsidiaries of the subsidiary. The fact that the shareholder is a foreign state does not change the analysis.

*Id.* at 474 (internal citations omitted). Ultimately, the Court held that "only direct ownership of a majority of shares by the foreign state satisfies the statutory requirement."

Because Jiangsu Zhonghan is not directly majority-owned by a foreign state or political subdivision thereof, the Court recommends that the District Court find that Jiangsu Zhonghan is not a foreign state for purposes of federal jurisdiction. *Dole Food Co. v. Patrickson*, 538 U.S. 468, 473–77 (2003).

In summary, complete diversity exists because Plaintiff is a citizen of China and Defendant is a citizen of Illinois. Further, the amount in controversy easily exceeds $75,000. Thus, the Court recommends that the District Court find that it has subject matter jurisdiction under § 1332(a)(2).

**IV.   Conclusion**

For the reasons discussed above, the Court recommends the District Court find that it has subject matter jurisdiction over this dispute based on the presence of complete diversity of citizenship between the adverse parties required by 28 U.S.C. § 1332(a).

The parties are advised that any objection to this recommendation must be filed in writing with the clerk within fourteen (14) days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTERED this 25th day of August, 2023.

                                                  s/ ERIC I. LONG
                                          UNITED STATES MAGISTRATE JUDGE